**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


THRESSIA M. TAYLOR                                                                          PLAINTIFF


V.                                        4:09CV00860 JMM/JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                     DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge James M. Moody.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations.  A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, Thressia M. Taylor, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Both parties have submitted Appeal Briefs (docket entries #12 and #16), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

Plaintiff alleged that she was limited in her ability to work by carpal tunnel syndrome. (Tr. 99). After conducting an administrative hearing at which Plaintiff, her witness, and a vocational expert ("VE") testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through February 9, 2009, the date of his decision. (Tr. 16-17) On October 7, 2009, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner. (Tr. 1-3) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #2)

---

[1]*Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

Plaintiff was 49-years old at the time she filed her application,[2] and 52 at the time of the administrative hearing. (Tr. 15, 34). She graduated from high school, and later received additional training in cosmetology. (Tr. 23). She had past relevant work as a cosmetologist. (Tr. 14, 23, 32, 100).

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2008). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* §§ 404.1520(b), 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual

_____

[2]In 2005, she filed her first application for benefits. After an adverse decision, she did not appeal. (Tr. 23).

functional capacity to perform past relevant work.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If so, benefits are denied.  *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If so, benefits are denied; if not, benefits are awarded.  *Id.*

The ALJ found that Plaintiff: (1) had worked, but had not engaged in substantial gainful activity, since her alleged onset date (Tr. 11); (2) had "severe" impairments consisting of carpal tunnel syndrome and right shoulder impingement (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (Tr. 12); (4) was less than fully credible regarding the intensity, persistence and limiting effects of her symptoms (Tr. 14); (5) retained the residual functional capacity for light work which did not require constant grabbing and handling of objects or overhead work (Tr. 12); (6) was unable to perform her past relevant work (Tr. 14); (7) could perform a substantial number of jobs that existed in the national economy, including positions as a general clerk and unskilled counter clerk and rental clerk.[3]  (Tr. 16).  Thus, the ALJ concluded that Plaintiff was not disabled.  *Id.*

Plaintiff argues that the ALJ erred: (1) in his credibility determination; (2) in

---

[3]In reaching this conclusion, the ALJ relied on the testimony of a vocational expert and his responses to hypothetical questions asked by the ALJ.

relying on the testimony of the vocational expert[3]; and (3) in not using the Medical-Vocational Guidelines to find she was disabled.  For the reasons discussed below, the Court concludes that each of Plaintiff's arguments is without merit.

First, Plaintiff contends that the ALJ's credibility determination was flawed. (Pltf's App. Brf. at 6-8).  In his decision (Tr. 12-14), the ALJ considered Plaintiff's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):[4]

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
>
> 2. the duration, frequency and intensity of the pain;
>
> 3. precipitating and aggravating factors;
>
> 4. dosage, effectiveness and side effects of   medication;
>
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations.  Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

---

[3]According to Plaintiff, the testimony of the vocational expert was not consistent with the evidence, was not entitled to controlling weight, and did not provide a basis for the residual functional capacity determination of the ALJ

[4]The ALJ also cited Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529 and 416.929.  (Tr. 12)  That Ruling tracks *Polaski* and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and elaborates on them.

There is little objective support in the record for Plaintiff's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *See Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007).

Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, the type of medications taken, the lack of treatment for significant periods of time, Plaintiff's daily activities, her functional capabilities and the lack of restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (same).

In June of 2006, Plaintiff completed a Function Report- Adult. (Tr. 107-14). She indicated that she lived alone in a house.[5] (Tr. 107) . She prepared her own meals, which took from five minutes (to make a sandwich) to three to four hours for more substantial meals. (Tr. 109). She cleaned a little every day and could wash dishes, although she would drop them at times. *Id.* She drove, shopped, paid bills, counted change, handled a savings account, and used a checkbook/money orders. (Tr. 110). She attended church at least twice a week and worked out at a senior center for an

---

[5]During the administrative hearing, in December of 2008, she testified that she was living with two of her sons in their house. (Tr. 22-23).

hour,[6] three to four days a week.  (Tr. 111).  She testified that she worked two or three days a week and did water aerobics and walked at the fitness center.  (Tr. 26-27). Plaintiff engaged in extensive daily activities, which is inconsistent with the level of pain and limitation she alleged.  *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)("acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain"); *Clevenger v. Social Security Administration*, 567 F.3d 971, 976 (8th Cir. 2009)(not unreasonable for ALJ to rely on array of activities, including laundry, dishes, changing sheets, ironing, preparing meals, driving, attending church and visiting friends and family, to infer assertion of disabling pain was not credible).

On February 19, 2007, Marty Siems, M.D., first diagnosed right carpal tunnel syndrome.  (Tr. 147).  Dr. Siems suggested surgery, after obtaining nerve conduction velocity results, but Plaintiff wanted to hold off on that.  (Tr. 148).  On June 7, 2007, Plaintiff opted to proceed with a carpal tunnel release and a trigger thumb release. (Tr. 153).

She was seen on July 19, 2007, for a follow-up following her right carpal tunnel release surgery.  She was doing well, moving her digits without difficulty, and had good range of motion in the hand.  (Tr. 168).

On August 23, 2007, she returned to the doctor, complaining of wrist pain.  She

---

[6]Plaintiff contends the ALJ's statement that she worked out for an hour was not supported by any statement or testimony by her.  (*Pltf's App. Brf.* at 8).  Plaintiff's point is not well taken: "[I] work out 3 to 4 days a week 1 hr. a day."  *See* Functional Report — Adult at Tr. 111.

was assessed with left de Quervain's disease.[7]   (Tr. 167).  She received an injection and was told to return in one month.  *Id.*  There is no indication in the record that she returned or otherwise sought treatment during the more than one and one-quarter years prior to the administrative hearing.[8]

An ALJ may properly consider Plaintiff's lack of sustained medical treatment when evaluating credibility.  *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999)(plaintiff failed to maintain consistent treatment pattern for alleged mental impairments); *Johnson v. Chater*, 108 F.3d 942, 947 (8th Cir. 1997)(paucity of medical treatment inconsistent with subjective complaints of severe pain).

Finally, Plaintiff contends that the ALJ's characterization of "Chudney Taylor's" testimony as "persuasive" is strong support for her claim of disability and that the ALJ failed to give proper weight to that "persuasive" testimony.  *(Pltf's App. Brf.* at 7).  The central problem with this argument is that Plaintiff has incorrectly read the ALJ's decision.  The ALJ found *Plaintiff's testimony* to be persuasive regarding her inability to perform her past relevant work as a hairdresser.  The ALJ merely noted that Chudney Bradley also offered testimony supporting Plaintiff's position that her carpal tunnel syndrome prevented her from working as a hairdresser.  (Tr. 15).  Of course, this Step 4 determination by the ALJ did *not* have *any bearing* on his Step 5 determination that Plaintiff's RFC allowed her to perform other jobs which existed in

---

[7]Fibrosis of the sheath of a tendon of the thumb.  *PDR Medical Dictionary* 555 (3d ed. 2006).

[8]There is an undated letter, printed on October 16, 2007, which indicated she underwent a bone mineral density measurement.  (Tr. 179-80).  There is no indication whether Plaintiff received any treatment as a result of those tests.

significant numbers in the national economy.

The ALJ's credibility analysis was proper. He followed the law and regulations, made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. *E.g.*, *Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008); *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Although she styles her two remaining arguments differently,[9] the substance

---

[9]The heading to Plaintiff's second argument reads as follows:

B.

THE VOCATIONAL EXPERT'S TESTIMONY WAS NOT CONSISTENT WITH THE EVIDENCE AND IS NOT ENTITLED TO CONTROLLING WEIGHT WITH RESPECT TO THE APPELLANT'S ABILITY TO PERFORM WORK IN THE NATIONAL ECONOMY OR PROVIDE A BASIS FOR THE RESIDUAL FUNCTION CAPACITY DETERMINED BY THE ADMINISTRATIVE LAW JUDGE

(Pltf's. App. Brf. at 8).

The Court has carefully reviewed the vocational expert's testimony. It is consistent with the evidence and does provide support for the ALJ's Step 5 determination that there was other work available in the economy which Plaintiff could perform. While the vocational expert's testimony does not provide support for the ALJ's residual functional capacity determination, but that is *not* the purpose of the vocational expert's testimony. The ALJ determines the residual functional capacity and then questions the vocational expert about what jobs an individual with that residual functional capacity and limitations could perform.

Plaintiff's third argument heading reads as follows:

C.

THE ADMINISTRATIVE LAW JUDGE ERRED IN NOT FINDING THAT THE CLAIMANT MET THE MEDICAL GUIDELINES OF 20 CFR  Part 404, Sub Part B

(Pltf's App. Brf. at 10).

of both deal with issues related to the transferability of work skills. (Pltf's App. Brf. at 9-11). Even if the Court were to assume that Plaintiff's arguments had merit regarding her lack of transferable work skills, they are moot because the vocational expert clearly testified that there were also jobs the hypothetical individual could perform that did *not* require transferable work skills. The vocational expert's testimony, in pertinent part, was as follows:

> Q All right. Could this hypothetical individual perform other jobs that exist in the local, regional, and national economy?
>
> A Yes, sir. Within those limits she could certainly do any number of your semi, semi-skilled light jobs such as your general clerks. She has skills that will transfer from the cosmetologist work, Your Honor. She's had to maintain files and records of her customers in the past, and verify invoices, order and purchase supplies. So she can do any number of those jobs. We have over 15,000 in the region, and over 500,000 nationally.
>
> Q All right. Can you identify any jobs that would *not* require transferable skills that would be consistent with that capacity?
>
> A Yes, sir. At the unskilled light level there are jobs such as your counter clerks, that would require only occasional reaching and handling, Your Honor, or your rental clerks, we have over 4,000 in the region and over 50,000 nationally.
>
> Q If you reduce the residual functional capacity to the sedentary level, and you can only do occasional grasping and handling, would you be able to identify any jobs that would be consistent with that profile?
>
> A At the sedentary level, Your Honor, there would be some limited jobs such as your surveillance system monitors. We have over 1,800 in the region, and over 30,000 nationally. Most work at the sedentary level, Your Honor, would require a lot of use of the hands in

---

Plaintiff's argument rests on the premise that she could perform less than a full range of sedentary work. *Id.* In fact, the ALJ found that she could perform light work. (Tr. 12). The record supports that finding.

terms of grasping and handling.  I don't know of other jobs in significant numbers at that level that she could perform.

Q  All right.  Is your testimony consistent with the provisions of the Dictionary of Occupational Titles?

A  Yes, sir.

(Tr. 33-34)(emphasis added.).

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), superceded by statute on other grounds; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).  The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.  The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.  *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and that Plaintiff's Complaint be dismissed, with prejudice.

DATED this <u>2nd</u> day of February, 2011.


_____
UNITED STATES MAGISTRATE JUDGE